UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFFORD LEON REID,

                    Plaintiff,

v.                                    Case No. 3:09-cv-1283-J-34MCR

WALTER A. MCNEIL, etc.;
et al.,

                    Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Clifford Leon Reid, an inmate of the Florida penal system proceeding pro se and in forma pauperis, initiated this action by filing a Civil Rights Complaint Form (Doc. #1) under 42 U.S.C. § 1983 on December 21, 2009, pursuant to the mailbox rule. Plaintiff is now proceeding on his March 10, 2010 Amended Complaint (Doc. #8) with exhibits (P. Ex.), in which he names the following individuals as Defendants: (1) Walter A. McNeil, the Secretary of the Florida Department of Corrections (FDOC) at the time; (2) Larry Henderson, a physician's assistant at Hamilton Correctional Institution (HCI); and (3) Tamey Mullinax, a security officer at

HCI.  Plaintiff makes the following claims: Defendant Henderson sexually assaulted Reid on March 19, 2008, and sexually harassed him and wrote a false disciplinary report on March 20th; Defendant Mullinax allowed Henderson to assault Reid on March 19th; and Defendant McNeil was deliberately indifferent to Reid's health and safety needs.  As relief, Plaintiff seeks monetary damages and injunctive relief.

This cause is before the Court on Defendants McNeil, Mullinax, and Henderson's Motion for Summary Judgment (Doc. #14; Motion) with exhibits (Def. Ex.).  Since Plaintiff is appearing pro se, the Court advised him of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond to the motion.  See Order of Special Appointment; Directing Service of Process Upon Defendants and Notice to Plaintiff (Doc. #9) (setting forth the provisions of Rule 56 of the Federal Rules of Civil Procedure), filed May 26, 2010. On December 13, 2010, Plaintiff filed a Response to Summary Judgment Motion (Doc. #22; Response) with exhibits (P. SJ. Ex.). This case is now ripe for review.

## II.  Summary Judgment Standard

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The record to be considered on a motion for summary judgment may

include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[1] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004). The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

---

[1] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amendments.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Plaintiff's Allegations and Claims

Plaintiff Reid, a wheelchair bound inmate, asserts that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.  Reid claims that, on March 19, 2008, Defendant Henderson verbally, sexually, and physically assaulted him.  He alleges that Henderson, during an attempt to perform a medical examination, directed an inmate orderly to help remove Reid from his wheelchair, assist Reid in standing up, and turn Reid

around so that Reid's back side was placed against the front of Henderson's body.  As Henderson held Reid under both arms for support, Reid immediately felt Henderson's "hard penis press between his clothed butt-cheek[s] and into [his] anus" three times until Reid's legs bent and lowered him away from Henderson's thrusting movements.  Amended Complaint at 15; P. Ex. E at 15. According to Reid, Henderson then released his hold on Reid, letting Reid fall to the floor.  P. Ex. A.  Henderson then "threw" Reid's body onto the examination table.  P. Ex. E at 15.

Reid asserts that Henderson's actions were in the presence of Carl Mirale (a black inmate assistant), and nurses "who could see everything by looking threw [sic] the large window of Defendant Henderson's Office door . . . ."  Amended Complaint at 15; P. Ex. E.  As a result of the March 19th incident, Henderson wrote a disciplinary report against Reid the following day, March 20th, and sexually harassed Reid by forcing him to completely disrobe and making verbal remarks that he wanted to see Reid's buttocks.  Reid asserts that Defendant Mullinax failed to intervene to stop Henderson's assault on Reid and that Defendant McNeil, aware of a pattern of abuse at HCI, was deliberately indifferent to Reid's health and safety needs.

## IV. Defendants' Motion for Summary Judgment

In support of the Motion for Summary Judgment, Defendants submitted the FDOC Inspector General's Report of Investigation (Report) relating to Reid's allegations of abuse.  Def. Ex. A.  The "Summary of Disposition" section of the Report states that, based on the witnesses' statements refuting Reid's testimony, the evidence obtained in the investigation is insufficient to support Reid's sexual misconduct allegations.  Def. Ex. A.  The Report sets forth findings in support of that conclusion:

> Captain Washington submitted an incident report[2] on March 26, 2008, indicating he received a witness statement form[3] from Inmate Reid alleging he had been abused. Inmate Reid indicated in the witness statement form that on March 19, 2008, Mr. Henderson called him for an examination where he and Inmate Miles stood him up and turned his back towards the front of Mr. Henderson's body. Mr. Henderson began to thrust him with his lower body in his butt.  Mr. Henderson then let him fall to the floor.  (Exhibit A-1 & A-2)
>
> In his sworn, digitally recorded interview on April 15, 2008 Inmate Reid, Clifford DC #111123 indicated:
>
>> On March 19, 2008, he was called to medical to see Clinical Associate Larry Henderson. Once Inmate Reid was in the medical office, Mr. Henderson asked, "What is this about you can't work?"  Inmate Reid

---

[2] See Def. Ex. A7, Incident Report.

[3] See Def. Exs. A8, Reid's Statement, dated March 25, 2008; B6.

explained to Mr. Henderson that he had been issued a no work pass and a daily assisted pass. Mr. Henderson advised a white female officer (later identified as Mullinax) that he wanted her to be a witness because he was going to stand Inmate Reid up and drop him. The female officer left the area to go get an orderly. Upon the arrival of the orderly, he and Mr. Henderson lifted Inmate Reid out of the wheel chair. Mr. Henderson instructed the orderly to turn Inmate Reid's back side to his (Henderson's) front side. Mr. Henderson held Inmate Reid in a standing position and began "humping" (thrusting his pelvis) Inmate Reid from behind. Inmate Reid indicated that he could feel Mr. Henderson's erection every time he "humped" him. Inmate Reid said Mr. Henderson "humped" him at least three times before he dropped him to the floor. Inmate Reid told Mr. Henderson, "this is not how an examination is supposed to be conducted and you are not putting me on the table, I refuse, I want to be put back in my wheelchair, I refuse the examination!" Inmate Reid alleged that Mr. Henderson responded, "No you're not going to refuse, we are going to get you up on this table." Mr. Henderson instructed the inmate orderly to lift Inmate Reid's legs while he (Henderson) lifted Inmate Reid by the arms. Mr. Henderson then threw Inmate Reid up on the table and twisted him sideways. Inmate Reid indicated he had been written a corrective consultation for failure to make his bunk and clean his sink properly. Inmate Reid indicated he grieved the corrective consultation because of his possession of the medical passes. (Exhibit B-1)

- 7 -

Inmate Reid was shown a photo of Inmate Meyers, Edson (W/M) DC #Y08492 and subsequently denied that he was the inmate who assisted Mr. Henderson. Inmate Reid was adamant that the inmate who assisted Mr. Henderson was black and had a name of Miles or Meyers. A search of the DC web was conducted and Inmate Reid positively identified Inmate Carl Meyers (B/M) DC #652815 as Mr. Henderson's assistant.

Inmate Reid's emergency room record was reviewed and it was revealed that he told Senior Registered Nurse J. Bunting, "When I was seeing the doctor he thrust his hips at my butt. My pants were on and his pants were on. There was no skin to skin contact or anal penetration. I have no injuries."[4]  Nurse Bunting documented Inmate Reid had no signs of trauma, no bruising, no swelling, and no scratches.[5]      (Exhibit A-3)

In his sworn, digitally recorded interview on April 16, 2008, Inmate Myers, Carl DC #652815 indicated:

> He had no knowledge of this incident. Inmate Meyers denied being present at the medical building on March 19, 2008 or witnessing the alleged incident. He also denied knowing any inmate named Clifford Reid. Inmate Meyers indicated he is currently assigned to inside grounds and has been since he arrived at Hamilton C.I.- Annex. (Exhibit B-1)

In her sworn, digitally recorded interview on May 14, 2008, Officer Mullinax, Tamey indicated the following:

---

[4] See Def. Ex. A9, Emergency Room Record.

[5] See Def. Exs. A9 ("No signs of trauma, no bruising, no scratches - which coincides with inmate[']s report of no injury"); A10, Diagram of Injury (indicating "[n]o injury identified").

- 8 -

She was present in medical on March
19, 2008, and Mr. Henderson summoned
for her to be a witness of the
examination.   Officer    Mullinax
witnessed Mr. Henderson encouraging
Inmate Reid to stand up.   Officer
Mullinax    indicated    that    she
witnessed a white inmate (she could
not positively identify the inmate)
assist Inmate Reid out of the wheel
chair to a standing position. She
indicated    the    inmate    orderly
assisted from the front of Inmate
Reid's   body   and   Mr.   Henderson
assisted Inmate Reid from behind.
The only part of Mr. Henderson's
body that was touching Inmate Reid
was his hands which were in Inmate
Reid's   arm   pits.    Inmate   Reid
refused to stand up so they assisted
him   back   to   the   wheel   chair.
Officer Mullinax then left the exam
room   to   perform   other   duties.
Officer Mullinax indicated Inmate
Reid did not make a complaint to her
as   he   passed   by   the   officer's
station   upon   exiting   the   medical
building.   Officer   Mullinax   also
indicated she did not witness Mr.
Henderson "humping" Inmate Reid at
anytime   nor   did   she   witness   any
other   improper   action   by   Mr.
Henderson.  (Exhibit B-1)

In  her  sworn  affidavit[6]  on  May  15,  2008,
Senior Health Services Administrator Kay Smith
indicated the following:

At   approximate[ly]   4:00   p.m.   on
March 19, 2008, she inquired to the
medical   staff   if   Inmate   Reid   had
been   evaluated   for   his   continued
statements   that   he   was   unable   to
perform any functions with his arms

---

[6] See Def. Ex. A11, Affidavit of Kay T. Smith, Senior Health
Services Administrator.

or legs. Mr. Henderson saw the inmate at approximately 4:00 p.m. and Ms. Smith stood in the hallway at Mr. Henderson's office and observed Mr. Henderson examine Inmate Reid. Ms. Smith [i]ndicated that she could not hear what was being spoken, but she observed the inmate attempt to stand and then he collapsed. Mr. Henderson grabbed Inmate Reid by his arms and with the assistance of a white inmate orderly, they lowered Inmate Reid to the floor. Ms. Smith indicated at no time did she witness any inappropriate behavior by Mr. Henderson. (Exhibit A-4)

In his sworn affidavit[7] on May 19, 2008, Inmate Meyers, Edson DC Y08492 indicated the following:

He recalled the day of March 19, 2008, and also indicated he was not working.[8] He further indicated he has not seen anything out of the ordinary happen by any [of] the nurses or staff members on this or any other day. (Exhibit A-5)

In his sworn, digitally recorded statement on June 2, 2008, Clinical Assistant Larry Henderson indicated the following:

_____

[7] Def. Ex. A12, Affidavit, dated May 19, 2008.

[8] Inmate Edson Bird Meyers averred:

I recall the day of the 19th of March and I have not seen anything out of the ordinary happen by any of the nurses or staff members on this or any other day.

Def. Ex. A12, Affidavit. Meyers did not indicate, in his affidavit, that he was not working on March 19th.

He was performing an examination on Inmate Reid because Inmate Reid indicated that he could not perform his daily tasks without the help of an assistant. Inmate Reid submitted an inmate request requesting to be seen by a physician because he received a corrective consultation for insufficient work. Upon Inmate Reid's arrival in Mr. Henderson's office he (Henderson) requested the presence of Officer Mullinax as a precautionary measure in case Inmate Reid fell to the floor and made any allegations. Mr. Henderson with the help of an inmate assistant (unidentified) assisted Inmate Reid to his feet and was attempting to turn him (Reid) 90 degrees where his back would be facing the examination table. Inmate Reid had been turned approximately 45 degrees when he went limp. When Inmate Reid collapsed both of Mr. Henderson's hands were in his arm pits and Mr. Henderson assisted in lowering Inmate Reid to the ground. Mr. Henderson stated the only part of his lower body that touched Inmate Reid other than his hands was his lower leg that was positioned on Inmate Reid's back to limit his movement and to prevent him from hurting himself while he (Inmate Reid) was on the floor. Inmate Reid was placed on the examination table and the examination was completed without further incident. Mr. Henderson denied that Inmate Reid refused to be examined at anytime. Mr. Henderson also denied "humping" or thrusting his pelvis into the buttocks area of Inmate Reid at any time. Mr. Henderson felt Inmate Reid made these allegations against him because he (Henderson) would not approve him for a daily living assistant. (Exhibit B-1)

- 11 -

Def. Ex. A1-A4 (emphasis deleted).

Defendants also submitted the pertinent documents relating to the disciplinary report that Defendant Henderson wrote the next day, March 20th, for the infraction of lying to staff.  Def. Exs. B1; B2.  The facts in the disciplinary report are as follows:

> At approximately 1100 hrs on March 20, 2008, while assigned as physician[']s assistant, I went to "G" dormitory to observe inmate Reid's, Clifford #111123 movements and activities.  Inmate Reid was located on the recreation field and returned to the dormitory.  Upon inmate Reid's arrival, **Inmate Reid was told to get undressed and get into his bunk.  Inmate Reid was then told to get up, get dressed and get back into his wheelchair.  Inmate Reid was ordered to do this so his movements and activities could be observed by myself.**  Inmate Reid was in medical on March 19, 2008 and would not participate or even attempt to help getting himself out of his wheelchair and onto the table.  Inmate Reid stated, "I can't do anything, you'll have to do everything for me!"  I ordered Inmate Reid to sit up and lift his arms, to which he stated, "I can not do it!"  Inmate Reid would not sit up and would not even lift his arms.  Inmate Reid was acting as if he was completely limp and stating that he could not do anything.  **It is my professional opinion that Inmate Reid was lying to staff by stating and acting as if he could not help himself on March 19, 2008.**  It should be noted that inmate Reid's medical condition is not bad enough to keep him from completing these tasks.  The shift supervisor was notified and authorized this report to be written.  Inmate Reid was placed in administrative confinement pending disposition of this report.

- 12 -

Def. Exs. B1, Disciplinary Report (emphasis added); B7, Disciplinary Worksheet, dated March 20, 2008.

As part of the investigative process, Reid gave a statement on March 25, 2008.

> On 3-19-08 Henderson PA called me to medical at Hamilton C.I. Annex and after arriving at medical and Henderson's officer, he read from my chart or pretended "if you fall it could completely paralyze you or kill you." "Ok, I need to examine you, I need you to get on this table, can you walk.["] To which I said "I need assistance" [He first asked me: What's this about you can't work, to which I said "I have a no work pass, and a daily assistance pass]["] He then told me "you're full of shit," "I'm going to stand you up and let you fall,["] then he called for an inmate to help him stand me up, Inmate Miles responded, then after they stood me up and turn[ed] my back body to Henderson's front body, Henderson began to thrust me with his lower body in to my but[t], then he let me fall to the floor. Henderson has fabricate[d] his report of 3-19-08.

Def. Exs. A8; B6.

Although given the opportunity, Reid did not request any witnesses. Def. Ex. B4, Witness Disposition. Nevertheless, the investigating officer determined that inmate Expavious Mills, a black male (DC #K51885), was a relevant witness. Id. Mills gave the following statement:

> On 3/19/08, I Expavious Mills was called to assist doctor Henderson with another inmate. Upon my arrival, the inmate was asked to stand, to which that point, he started to lean fo[r]ward, in which he was caught and placed in a chair. From that point there, I returned to my regular duty.

Def. Ex. B5, Witness Statement, dated March 26, 2008.   The
disciplinary team found Reid guilty of the disciplinary infraction,
lying to staff.  Def. Ex. B10.

Reid grieved the decision of the disciplinary team, and the
Department responded as follows, in pertinent part:

> Your grievance has been received, reviewed and
> evaluated.   Investigation reveals that you
> were found guilty based upon the professional
> medical opinion of PA Henderson.  On March 19,
> 2008[,] you were ordered to perform several
> tasks while in medical and you refused to
> participate or attempt to perform the tasks by
> stating "I can't do anything."  Mr. Henderson
> stated in the Disciplinary Report regarding 9-
> 10 Lying to Staff that it was his professional
> medical opinion that you do not have a
> condition that would prevent you from
> performing the duties in which you was [sic]
> ordered to perform.
>
> Furthermore, witness statements were reviewed
> and considered by the Disciplinary Team and
> you were given the opportunity during
> investigation to provide any evidence or
> witnesses on your behalf, to which you did
> not, with the exception of a statement in
> which you wrote (which was read and considered
> by the team).   Based on this, I find no
> substantiation to your allegation that a
> violation of Due Process has occurred.   You
> have not provided any evidence to substantiate
> your allegation that the Reporting Officer
> furnished false information in the Statement
> of Facts.   Furthermore, it is the
> responsibility of the Disciplinary Team to
> weigh the facts, review all the statements,
> and determine the credibility of any
> witnesses.  In this case, the Team accepted
> the Officer's statement as credible and a
> decision was rendered to uphold the
> requirements set forth in Chapter 33-601.

> Your D.R. was conducted in accordance with the
> rules and policies of the department.  I find
> that you have not presented any evidence that
> would warrant the overturning of the finding
> of the team.  Based on the above information,
> your grievance is denied.

Def. Ex. C, Response, dated April 10, 2008.

Based upon these facts, Defendants contend that there is no genuine issue as to any material fact and that each Defendant is entitled to summary judgment as a matter of law based on the record before the Court.  They assert that there is no evidence of any physical injury, that Defendant McNeil did not personally participate in the alleged assault and cannot be held responsible under a theory of respondeat superior for the actions of his subordinates, that any allegations that McNeil failed to properly respond to Reid's inmate grievances or investigate Reid's allegations of abuse fail to state a claim for relief under section 1983, and that the challenged disciplinary conviction was based on constitutionally sufficient evidence.

### V. Law and Conclusions

The Eleventh Circuit has set forth the standard for an excessive use of force claim for an inmate:

> The use of force constitutes cruel and unusual
> punishment where it is applied "maliciously
> and sadistically to cause harm." Skrtich, 280
> F.3d at 1300.[9]  Thus, in order to prevail on
> an excessive-force claim, a plaintiff must
> demonstrate that those who used force against

---

[9] Skrtich v. Thornton, 280 F.3d 1295 (11th Cir. 2002).

him acted with a malicious purpose. <u>See</u>
<u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321 (11th
Cir. 2002). In addition, a plaintiff must
prove that a requisite amount of force was
used against him. <u>Hudson v. McMillian</u>, 503
U.S. 1, 9-10, 112 S.Ct. 995, 1000, 117 L.Ed.2d
156 (1992). "The Eighth Amendment's
prohibition of 'cruel and unusual' punishments
necessarily excludes from constitutional
recognition <u>de</u> <u>minimis</u> uses of physical force,
provided that the use of force is not of a
sort repugnant to the conscience of mankind."
<u>Id</u>. (quotation omitted). In determining
whether the amount of force used against an
inmate was <u>de</u> <u>minimis</u>, a court may consider
the extent of the injuries suffered by the
inmate. <u>Skrtich</u>, 280 F.3d at 1302.
Nevertheless, a court ultimately should decide
an excessive force claim "based on the nature
of the force rather than the extent of the
injury." <u>Wilkins v. Gaddy</u>, 559 U.S. --, --,
130 S.Ct. 1175, 1177, -- L.Ed.2d -- (2010).

Moreover, an officer need not actually
participate in using excessive force against a
prisoner in order to be liable under § 1983
for cruel and unusual punishment. <u>Skrtich</u>,
280 F.3d at 1301. "Rather, an officer who is
present at the scene and who fails to take
reasonable steps to protect the victim of
another officer's use of excessive force, can
be held liable for his nonfeasance." <u>Id</u>.

<u>Vicks v. Knight</u>, 380 Fed.Appx. 847, 851 (11th Cir. 2010) (not

selected for publication in the Federal Reporter).

This Court finds that Defendants McNeil, Mullinax and

Henderson have met their initial burden of showing, by reference to

affidavits and other documentary evidence, that there are no

genuine issues of material fact that should be decided at trial

with respect to Plaintiff's claims against them. Defendants have

presented evidence that Defendant Henderson summoned for Defendant

Mullinax to be a witness to the medical examination of Reid on March 19th. Def. Ex. A3. Officer Tucker had issued a disciplinary report to Reid for Reid's failure to perform housekeeping tasks, P. Exs. A, E, and therefore, the medical office had scheduled Reid's examination due to Reid's continued complaints that he was unable to perform any functions with his arms and legs. Def. Ex. A11.

Defendants have presented evidence that Henderson's March 19th examination was professionally motivated. When Reid collapsed, Henderson's hands were in Reid's arm pits, and Henderson assisted in lowering Reid to the ground. Henderson stated the only part of his lower body that touched Reid, other than his hands, was his lower leg that was positioned on Reid's back to limit his movement and to prevent him from hurting himself while he was on the floor. Def. Ex. A4. According to Henderson, Reid was placed on the examination table, and the examination was completed. Henderson denied "humping" or thrusting his pelvis into the buttocks area of Reid at any time. Id. Henderson believed that Reid made these allegations against him because Henderson would not approve him for a daily living assistant to help him with his housekeeping tasks. Id.

Mullinax saw Henderson encouraging Reid to stand up and then assist Reid by standing behind Reid and placing his hands in Reid's armpits. Id. Mullinax did not see Henderson thrust his pelvis in the buttocks area of Reid nor did she witness any other improper

action by Henderson during that examination.  Id.  Standing in the hallway at Henderson's office, Senior Health Services Administrator Kay Smith also observed Henderson's examination of Reid.  Def. Ex. A11, Affidavit.  While Smith could not hear the conversation between Henderson and Reid, she saw Reid "attempt to stand then begin to go limp," when Henderson "grabbed" Reid "under his arms" and, with the assistance of a white inmate orderly, they lowered Reid to the floor.  Id.

Defendant Mullinax and Administrator Smith agree that a white inmate orderly assisted Henderson.  Def. Exs. A3; A4; A11. Recalling the incident, inmate Edson Bird Meyers, a white orderly, averred that he did not see anything "out of the ordinary happen by any of the nurses or staff members on this or any other day."  Def. Ex. A12, Affidavit.  Further, Expavious Mills, a black inmate, stated that he was called to assist Henderson with another inmate that day.  Def. Ex. B5.

Because Defendants have met this initial burden, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial.  Plaintiff has failed to present this Court with any evidence as to his claims against the Defendants, other than his own statements in his Affidavits (P. SJ. Exs. U; V), which simply reiterate the allegations in his Amended Complaint with respect to those claims.  He concedes that

Henderson's actions were committed in the presence of a black inmate orderly and "on-looking nurses who could see everything by looking threw [sic] the large window of Defendant Henderson's Office door . . . ."  Amended Complaint at 15.

As the Court must view contested facts in the light most favorable to Reid, as the non-movant, assuming arguendo that Henderson bumped his pelvis in the buttocks area of Reid three times as he and the orderly attempted to help Reid to a standing position, such conduct does not rise to the level of a federal constitutional violation.  The following facts are uncontested: Henderson and Reid were both clothed in "pants" during the incident, Def. Ex. A9; Reid had boxer shorts under his pants, P. SJ. Ex. V at 89; there was no skin to skin contact, id.; P. SJ. Ex. V at 84; Mullinax and Smith watched as Henderson and the assisting inmate orderly attempted to help Reid out of the wheelchair to a standing position, Def. Exs. A3; A4; A12; no injuries were identified immediately thereafter on the emergency room record, Def. Exs. A9; A10; there were no signs of trauma, bruising or scratches, which coincided with Reid's report of "no injury," Def. Ex. A9; and Reid never complained to Mullinax as he passed the officer's station upon exiting the medical building, Def. Ex. A4.

Nurse Bunting, on the emergency room record, quoted Reid's description of the occurrence as follows: "when I was seeing the doctor, he thrust his hips at my butt, my pants were on, his pants

were on.  There was no skin to skin contact, no anal penetration.
I have no injuries." Def. Ex. A9.  However, in Reid's affidavit in
opposition to the summary judgment motion, while still
acknowledging that he was clothed in pants and boxer shorts and
Henderson was clothed in pants, Reid asserts that Henderson thrust
his penis into Reid's anus.  P. SJ. Ex. V at 84.  Also, in another
affidavit, Reid states that the confinement officer took his blood-
stained underwear, which was the only physical evidence of
Henderson's sexual assault upon him.  P. SJ. Ex. U at 78.
Nevertheless, Plaintiff's affidavits provide no basis for a jury to
conclude that Defendant Henderson sexually assaulted Plaintiff.  If
this case were to proceed to trial, Plaintiff would have no
witnesses, besides himself, to support his version of the events,
which in itself is insufficient to establish an Eighth Amendment
violation.  Moreover, none of the medical records or other
documentary evidence supports his version.

Conversely, the affidavits (Def. Exs. A11; A12) and other
documentary evidence, including medical records and the statements
of assisting inmate orderlies,[10] support Defendants' description of
the events with respect to Plaintiff's claim that Henderson thrust
his pelvis towards Reid's buttocks area, as they were clothed in at

---

[10] Expavious Mills, a black inmate, recalled that he was called
to assist Henderson with another inmate that day.  Def. Ex. B5.
And, Edson Bird Meyers, a white inmate orderly, stated he did not
see anything "out of the ordinary happen by any of the nurses or
staff members on this or any other day."  Def. Ex. A12.

least three articles of clothing between them, with no skin to skin contact.  Further, the medical evidence contains Nurse Bunting's quoted description of Plaintiff's complaint:  "I have no injuries." Def. Ex. A9.

Undoubtedly, there was some physical contact when Reid "went limp," Def. Ex. A4, as Henderson and the inmate orderly were assisting Reid from the wheelchair to a standing position.  That minimal contact was to prevent any unnecessary injury to Reid as he collapsed.  Reid has failed to present any evidence that there was malicious intent on the part of Henderson to injure Reid.  It is simply unrealistic to believe that Henderson's penis (through his pants) penetrated Reid's anus (through Reid's pants and boxer shorts), causing blood-stained underwear, given the undisputed facts that Administrator Smith, Mullinax and the assisting inmate orderly observed Henderson's actions and thereafter reported that they did not witness any inappropriate actions or improper behavior by Henderson towards Reid during that examination.

Henderson's encounter with Reid on March 20th was also professionally motivated.  Since Reid had collapsed the day before, Henderson directed Reid to perform routine tasks to test Reid's range of mobility ("so his movements and activities could be observed") to determine whether Reid's medical condition was deteriorating to the extent that he could not perform his daily living tasks without assistance.  Def. Ex. B1.  Based on

Henderson's observations of Reid's movements, he concluded that "Reid was lying to staff by stating and acting as if he could not help himself on March 19, 2008." Id. For that reason, Henderson wrote the March 20th disciplinary report for lying to staff.

Here, given the strong and consistent statements of the correctional officers, the supporting statements of medical personnel, the lack of evidence of any injury, and the lack of any other evidence to support Plaintiff's claims, this is the type of case as to which summary judgment is appropriate. See Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (stating "a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment"). Thus, this Court concludes that no reasonable jury could believe, based upon the evidence of record, that Defendant Henderson sexually assaulted Reid during the March 19th medical examination or harassed him the following day.

Further, with respect to Defendant Mullinax, Plaintiff's affidavits provide no basis for a jury to conclude that Mullinax permitted Henderson to assault Reid. Mullinax, in her sworn, recorded interview, stated that she saw Henderson and the assisting inmate orderly help Reid out of his wheelchair to a standing position and that Henderson simply placed his hands in Reid's armpits to help him stand. Def. Ex. A3. Since she did not view any inappropriate action by Henderson at any time, there was no

reason for her to intervene to stop an examination that she perceived as professional and appropriate to determine the extent of Reid's range of mobility.  Id.  When Reid passed the officer's station upon exiting the medical building, he did not complain to Mullinax or to the Senior Health Services Administrator Smith who also witnessed the examination.  Id.  Thus, this Court concludes that no reasonable jury could believe, based upon the evidence of record, that Defendant Mullinax violated Reid's federal constitutional rights when she failed to intervene.

With respect to Secretary McNeil, Plaintiff has not shown that McNeil was deliberately indifferent to Reid's medical and safety needs.  The United States Court of Appeals for the Eleventh Circuit has stated:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted).  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[11]  "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

---

[11] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).

> "The necessary causal connection can be
> established 'when a history of widespread
> abuse puts the responsible supervisor on
> notice of the need to correct the alleged
> deprivation, and he fails to do so.'"
> Cottone, 326 F.3d at 1360 (citation
> omitted).[12]     "The deprivations that
> constitute widespread abuse sufficient to
> notify the supervising official must be
> obvious, flagrant, rampant and of continued
> duration, rather than isolated occurrences."
> Brown, 906 F.2d at 671.  A plaintiff can also
> establish the necessary causal connection by
> showing "facts which support an inference that
> the supervisor directed the subordinates to
> act unlawfully or knew that the subordinates
> would act unlawfully and failed to stop them
> from doing so," Gonzalez, 325 F.3d at 1235, or
> that a supervisor's "custom or policy . . .
> resulted in deliberate indifference to
> constitutional rights," Rivas v. Freeman, 940
> F.2d 1491, 1495 (11th Cir. 1991).

Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008).  The
supervisory claims against Defendant McNeil fail since Reid has
failed to present any evidence suggesting that McNeil personally
participated in the alleged constitutional violations.  Indeed, the
record evidence established that he did not.  Further, the record
discloses no facts suggesting any causal connection between his
actions or inactions and the alleged constitutional deprivations.
The Summary Judgment Motion will be granted as to claims made
against Defendant McNeil.

Under these circumstances, the undersigned concludes that
there are no genuine issues of material fact to be tried by a jury,

---

[12] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

and that summary judgment in favor of the Defendants is due to be entered. Accordingly, Defendants' Motion for Summary Judgment (Doc. #14) will be granted, and judgment will be entered in their favor.

Therefore, it is now

**ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. #14) is **GRANTED**.

2. The Clerk shall enter final judgment in favor of the Defendants.

3. The Clerk of Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of August, 2011.

MARCIA MORALES HOWARD
United States District Judge

sc 8/8
c:
Clifford Leon Reid
Counsel of Record